UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNELL D. JOHNSON,<br><br>          Petitioner,<br><br>   vs.<br><br>ERIC ARNOLD,<br><br>          Respondent. | No. 2:15-cv-1635-EFB P<br><br>MEMORANDUM AND ORDER |

Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] ECF Nos. 8 & 9. Petitioner challenges a judgment of conviction entered against him on November 2, 2011 in the Sacramento County Superior Court on charges of assault with a deadly weapon pursuant to Pen. Code § 245(a)(1). He seeks federal habeas relief on the following grounds: (1) the trial court improperly declined to instruct the jury with a pinpoint false imprisonment instruction; (2) the trial court erred in failing to instruct the jury on the concept of corpus delicti; and (3) the evidence is insufficient to sustain his conviction for assault with a deadly weapon. For the reasons set forth below, petitioner's application for habeas corpus must be denied.

/////

---

[1] The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

1

## I. Background

In its unpublished memorandum and opinion affirming petitioner's judgment of conviction on appeal, the California Court of Appeal for the Third Appellate District provided the following factual summary:

> Toni Ousley–Harps knew defendant for 23 years and had a daughter with him. In March 2011 she was estranged from her husband and rekindling a romance with defendant.
>
> On March 26, 2011, Ousley–Harps and defendant went to the Adam and Eve adult store to pick up a few items. Defendant got a text from his ex-wife; Ousley–Harps heard defendant say his ex-wife's name while he was looking at a book of sex positions. She looked at defendant's phone and determined the text contained a sexually suggestive song. This angered Ousley–Harps, who threw the cell phone at defendant and left the shop, waiting for him in her car. Defendant joined her a moment later.
>
> According to Ousley–Harps's testimony, the two started an argument that continued when they got into the car. Ousley–Harps was so angry she refused to listen to defendant. When they argued defendant typically tried to remove himself from the situation. As Ousley–Harps drove, defendant repeatedly asked to be let out of the car.
>
> Ousley–Harps drove westbound on Interstate 80, entering at the Greenback on-ramp as defendant kept asking to be let out of the car. As the argument continued, Ousley–Harps drove 70 miles per hour in the number four lane. She had no problems controlling her car or staying in the lane.
>
> According to Ousley–Harps, defendant hit his hands on the dashboard as he demanded to be let out as the car traveled on Interstate 80. After repeatedly asking to be let out of the car, defendant reached over and pulled on the steering wheel, making contact with Ousley–Harps's face. Ousley–Harps then "pulled" on the steering wheel, losing control of the car and crashing it.
>
> Ousley–Harps's car struck a light pole in the freeway's emergency lane, causing the air bags to deploy. Defendant and Ousley–Harps were both able to get out of the car; Ousley–Harps sustained minor cuts and a cracked rib. Another motorist called for emergency personnel who arrived soon thereafter.
>
> California Highway Patrol (CHP) Officer Michael Macias and his partner arrived at the scene of the accident at around 9:00 p.m. Ousley–Harps's heavily damaged car was on the shoulder and dirt embankment of Interstate 80, west of Greenback Lane. A 25–foot light pole was knocked over, blocking the number five lane and partially blocking lane number four. Ousley–Harps was yelling and appeared angry, while defendant argued aggressively with her. As the officers separated the couple, Officer Macias heard Ousley–

> Harps yell in defendant's direction: "You tried to kill me. You grabbed the steering wheel."
>
> Ousley–Harps was taken to U.C. Davis Medical Center. Her husband was initially in the emergency room with her, but left at her request. After her husband left, Ousley–Harps told Officer Macias that she and defendant went to the Adam and Eve store to get some toys and books, and got into an argument before she drove onto the freeway. Defendant asked her to get out of the car at some moment during the argument. At some point she was hit on the right side of her jaw. The next thing she knew, defendant yelled: "You are going with me," and grabbed the steering wheel, probably steering it to the right. Officer Macias noticed some redness and swelling where Ousley–Harps indicated she had been hit.
>
> In April 2011 Ousley–Harps wrote a notarized three-page letter giving her version of the incident. She wrote that defendant: "struck me under the right side of my chin and grabbed the steering wheel causing me to lose control."
>
> Ousley–Harps testified that defendant did not intentionally strike her. She did not recall defendant making any statement other than "Let me the fuck out of the car." She lied about the incident to the CHP officer because she did not want to cause more problems with her estranged husband, who was within earshot at the hospital. The notarized letter was written when she was still mad at defendant.
>
> Ousley–Harps was also called as a defense witness. Her husband was there for most of her interview at the hospital; she did not want him there after noticing he was angry and upset. She asked him to leave because she would be traveling home with him and did not want him to hear the details of the incident. She did not feel comfortable telling the truth even after he left the room, as she believed that whatever she said to Officer Macias would get back to her husband.

*People v. Johnson*, 2014 WL 793582, at *1–2 (Cal.App. 3 Dist., 2014) (unpublished).

**II. Standards of Review Applicable to Habeas Corpus Claims**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. *See Wilson v. Corcoran*, 562 U.S. 1,5 (2010); *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*, 202 F.3d 1146, 1149 (9th Cir. 2000).

/////

/////

/////

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision. *Thompson v. Runnels*, 705 F.3d 1089, 1096 (9th Cir. 2013) (citing *Greene v. Fisher*, 565 U.S. 34 (2011)); *Stanley v. Cullen*, 633 F.3d 852, 859 (9th Cir. 2011) (citing *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)). Circuit court precedent "may be persuasive in determining what law is clearly established and whether a state court applied that law unreasonably." *Stanley*, 633 F.3d at 859 (quoting *Maxwell v. Roe*, 606 F.3d 561, 567 (9th Cir. 2010)). However, circuit precedent may not be "used to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013) (citing *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (per curiam)). Nor may it be used to "determine whether a particular rule of law is so widely accepted among the Federal Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct. *Id.* Further, where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is "clearly established Federal law" governing that issue. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

A state court decision is "contrary to" clearly established federal law if it applies a rule contradicting a holding of the Supreme Court or reaches a result different from Supreme Court precedent on "materially indistinguishable" facts. *Price v. Vincent*, 538 U.S. 634, 640 (2003). Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[2] *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Williams*, 529 U.S. at 413; *Chia v. Cambra*, 360 F.3d 997, 1002 (9th Cir. 2004). In this regard, a federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 412. *See also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007); *Lockyer*, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'"). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. at 103.

If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. *Delgadillo v. Woodford*, 527 F.3d 919, 925 (9th Cir. 2008); *see also Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. *Stanley*, 633 F.3d at 859; *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

---

[2] Under § 2254(d)(2), a state court decision based on a factual determination is not to be overturned on factual grounds unless it is "objectively unreasonable in light of the evidence presented in the state court proceeding." *Stanley*, 633 F.3d at 859 (quoting *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004)).

5

previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. This presumption may be overcome by a showing "there is reason to think some other explanation for the state court's decision is more likely." *Id.* at 785 (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but does not expressly address a federal claim, a federal habeas court must presume, subject to rebuttal, that the federal claim was adjudicated on the merits. *Johnson v. Williams*, 568 U.S. 289, 292 (2013).

Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley*, 633 F.3d at 860; *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. *Stancle v. Clay*, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012). While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. This court "must determine what arguments or theories ... could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Id.* at 102. The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'" *Walker v. Martel*, 709 F.3d 925, 939 (9th Cir. 2013) (quoting *Richter*, 562 U.S. at 98).

When it is clear, however, that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo. *Stanley*, 633 F.3d at 860; *Reynoso v. Giurbino*, 462 F.3d 1099, 1109 (9th Cir. 2006); *Nulph v. Cook*, 333 F.3d 1052, 1056 (9th Cir. 2003).

**III. Petitioner's Claims**

### A. <u>Failure to Give a Pinpoint Instruction on False Imprisonment</u>

Petitioner claims that the trial court improperly refused to instruct the jury with "a lawful resistance and/or necessity" instruction. ECF No. 1 at 6-8.[3] The court of appeal rejected this claim, reasoning:

> Defendant contends the trial court committed prejudicial error in denying his request for a pinpoint instruction on false imprisonment. We disagree.
>
> Defendant asked the trial court give the following pinpoint instruction on misdemeanor false imprisonment, a modified version of CALCRIM No. 1242:
>
> "A person is guilty of this crime if: [¶] 1. A person intentionally ... confined ... a person; [¶] AND [¶] 2. A person's act made that person stay or go somewhere against that person's will. [¶] An act is done against a person's will if that person does not consent to the act. In order to consent, a person must act freely and voluntarily and know the nature of the act. [¶] False imprisonment does not require that the person restrained or detained be confined in jail or prison."
>
> In support of the instruction, defense counsel argued he wanted to explain to the jury that defendant "was confined against his will at that time and had a lawful right to use some force in order to be able to remove himself from the situation." The trial court denied the request, stating: "You can certainly argue that in your argument, in any event. But there is no evidence, whatsoever, that he was forced into that car from the Adam & Eve store."
>
> A defendant has a right, upon request, to an instruction that pinpoints the theory of the defense. (*People v. Earp* (1999) 20 Cal.4th 826, 886.) A proper pinpoint instruction does not pinpoint specific evidence, but the theory of the defendant's case. (*People v. Wright* (1988) 45 Cal.3d 1126, 1137.) "The pinpoint instruction highlights the burden of persuasion applicable to a decisive element of the case. It does not cast doubt upon the credibility of the prosecution evidence but stresses the burden which the prosecution bears in the jury's evaluation of the evidence on the point. ' "It is

---

[3] Page number citations such as this one are to the page numbers reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

7

not for the trial judge to say that certain testimony should raise a reasonable doubt in the minds of the jurors as to an essential element of the People's case." ' " (*People v. Adrian* (1982) 135 Cal.App.3d 335, 341.)

"[A] trial court need not give a pinpoint instruction if it is argumentative [citation], merely duplicates other instructions [citation], or is not supported by substantial evidence [citation]." (*People v. Bolden* (2002) 29 Cal.4th 515, 558.) "It is of course virtually axiomatic that a court may give only such instructions as are correct statements of the law. [Citation.] Accordingly, a court may refuse an instruction that is incorrect. [Citation.] It may also refuse an instruction that is confusing. [Citation.]" (*People v. Gordon* (1990) 50 Cal.3d 1223, 1275, disapproved on other grounds in *People v. Tully* (2012) 54 Cal.4th 952, 1031.)

There was no charge of false imprisonment and thus CALCRIM No. 1242 was not applicable. Nonetheless, defendant asserts he was unlawfully imprisoned when Ousley–Harps refused to let him leave the car. According to defendant, the requested pinpoint instruction "was ... a clear indication that he sought to rely upon the defense of lawful resistance." Claiming the force he used to resist the offense was reasonable, defendant contends the trial court was obligated to give the pinpoint instruction.

Lawful resistance to the commission of a public offense may be made by a party about to be injured in order to prevent an offense against his person. (§§ 692, 693.) A person's right to resist a crime is not a license to respond with unrestricted force. Instead, " 'any right of self-defense is limited to the use of such force as is reasonable under the circumstances. [Citation.]' [Citations.]" (*People v. Minifie* (1996) 13 Cal.4th 1055, 1065, 1064.)

Defendant did not request an instruction on self-defense, which would have informed the jury that any use of force would have to be reasonable under the circumstances. Assuming, as defendant asserts, that trial counsel was "inartfully" trying to set forth a defense of necessity or lawful resistance, neither the law nor the evidence supports either defense.

"To justify an instruction on the defense of necessity, there must be evidence sufficient to establish that defendant violated the law (1) to prevent a significant evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in which he did not substantially contribute to the emergency. [Citations.]" (*People v. Pepper* (1996) 41 Cal.App.4th 1029, 1035, fn. omitted.)

The "evil" defendant allegedly tried to prevent here was being in the car with his paramour while she was angry. Defendant entered the car voluntarily and his victim was driving defendant to his intended destination. The only reason for his wanting to leave was that he preferred to withdraw from arguments with Ousley–Harps. Balanced against this harm was the significant danger of

8

defendant's action—grabbing the steering wheel of a car traveling on the freeway at 70 miles per hour. The resulting crash not only injured defendant's victim, but created a significant traffic hazard and potential danger to other motorists—a 25–foot long light pole obstructing two lanes of a freeway at night. The balance of harm to be avoided and harm incurred from defendant's action would have justified rejecting an instruction on necessity or on self-defense. Since the requested instruction was premised on an inapplicable defense, it was properly rejected.

We also agree with the reason given by the trial court for rejecting the instruction. Relying on *People v. Camden* (1976) 16 Cal.3d 808 (*Camden*), defendant claims it was irrelevant that he voluntarily entered the car he later sought to leave. In *Camden* the victim accepted a ride offered by defendant, whom she had recently met in passing. (*Id*. at p. 811.) Defendant drove a short distance in the victim's intended direction, but then veered off and forcibly prevented her from leaving after she asked to be dropped off or taken home. (*Ibid*.) She did not try to escape when he drove on the freeway, but was able to jump out of the car 30 to 45 minutes later. (*Id*. at pp. 811–812.)

In rejecting the contention that defendant was guilty of false imprisonment rather than kidnapping because his victim voluntarily entered the car (*Camden*, *supra*, 16 Cal.3d at p. 812), the Supreme Court noted: "An accused forceful enough to restrain his victim inside the car could, under the contention urged by defendant, only be convicted of false imprisonment regardless of the amount of force used or how far asportation continued. On the other hand the careless or relatively passive accused who allowed his victim momentarily to leave the vehicle before being forced to return during the course of asportation would be guilty of kidnaping," a result it termed an "absurdity." (*Id*. at p. 815, fn. 3.)

Defendant argues this shows that "using force to restrain a person who tries to escape from a car in which [they] voluntarily entered is kidnap [and] simply restraining them in the car (i.e., not stopping) is false imprisonment." This contention ignores another passage in the *Camden* opinion: "Evidence that asportation was initiated voluntarily remains relevant to a determination by the trier of fact on the issue of the alleged victim's consent to continued asportation. Although not involved in the instant case, evidence of a prior close relationship between the parties, such as marriage or other romantic or family ties, is similarly relevant although likewise not dispositive where there is substantial evidence that asportation was induced or continued by means of threat or force." (*Camden*, *supra*, 16 Cal.3d at p. 815, fn. 4.)

We do not need to define the precise contours of the crime of false imprisonment to reject defendant's argument. Here, defendant entered the car willingly, he had a longstanding relationship and a romantic involvement with the driver who was taking him to his intended destination, and the driver declined to stop the car on a freeway and let defendant out when defendant simply wanted to avoid an argument. There is no evidence of false imprisonment.

9

> Since there was not substantial evidence to support the crime, the
> trial court did not have to give the requested pinpoint instruction.

*Johnson*, 2014 WL 793582, at *2–4. Petitioner presented this claim to the California Supreme Court (Lodg. Doc. No. 7 ("Petition for Review") at 3-18) and it was summarily denied (Lodg. Doc. No. 8 ("Order Denying Review")).

### 1. **Applicable Legal Standards**

A state court's refusal to give an instruction does not, standing alone, give rise to a cognizable claim for federal habeas corpus relief. *Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). Instead, relief is available only where the instructional error so infected the entirety of the petitioner's trial that it deprived him of due process. *Estelle,* 502 U.S. at 72. The United States Supreme Court has emphasized that "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977). Consequently, the burden lies "especially heavy" on a petitioner who claims that an instruction was erroneously omitted. *Id*. Lastly, even where an instructional error rises to the level of a constitutional violation, federal relief is unavailable unless "the error, in the whole context of the particular case, had a substantial and injurious effect or influence on the jury's verdict." *Calderon v. Coleman*, 525 U.S. 141, 147 (1998) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

### 2. **Analysis**

As noted *supra*, the court of appeal concluded that neither California law nor the relevant evidence supported a pinpoint instruction on false imprisonment, lawful resistance, or necessity. It found that the record indicated: (1) petitioner had entered the victim's car voluntarily, (2) he had a longstanding relationship with the victim, (3) he was being conveyed to his intended destination at the time he grabbed the steering wheel, and (4) the only 'evil' he sought to avoid through this act was further verbal argument with the victim. *Johnson*, 2014 WL 793582, at *3-4. These factual determinations are supported by the record, not unreasonable and, indeed, the petition now before this court undertakes no effort to posit[4] an alternate narrative. It is well

---

[4] Petitioner does argue that he asked to be let out of the car "after being assaulted by [the

settled that due process cannot be offended by the failure to give an instruction that is not supported by the evidence. *See Hopper v. Evans*, 456 U.S. 605, 611(1982); *Menendez v. Terhune*, 422 F.3d 1012, 1029 (9th Cir. 2005); *Clark v. Brown*, 450 F.3d 898, 904-05 (9th Cir. 2006). Nor can this court disturb the appellate court's decision that, based on these facts, California law did not entitle petitioner to his desired pinpoint instruction. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Further, the record supports that court's determination. The uncontroverted testimony was that, at the time petitioner grabbed for the steering wheel, the car was on the freeway travelling seventy miles per hour. Lodg. Doc. No. 2 (Reporter's Transcript Vol. I) at 40. The danger such an action presented is so blatantly obvious that it requires little elaboration. Continued verbal argument coupled with the refusal to stop and let petitioner out were the only apparent 'evil' confronting petitioner. Those circumstances did not leave petitioner with no adequate alternative. Nor did they present an imminent risk of such gravity that grabbing the steering wheel did not create a greater danger than the one being avoided. Thus, a necessity[5] instruction under California law cannot be justified under any logic. He fares no better invoking the defense of lawful resistance insofar as that defense is "limited to the use of such force as is reasonable under the circumstances." *People v. Minifie*, 13 Cal. 4th 1055, 1064–65 (1996).

/////

---

victim]." ECF No. 1 at 6. This assault appears to refer to the victim throwing a phone at the petitioner, an event which occurred while both were still in the store, *prior* to entering the car. Lodg. Doc. No. 2 (Reporter's Transcript Vol. I) at 64.

[5] As the court of appeal noted:

> To justify an instruction on the defense of necessity, there must be evidence sufficient to establish that defendant violated the law (1) to prevent a significant evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in which he did not substantially contribute to the emergency.

*People v. Pepper*, 41 Cal.App.4th 1029, 1035 (Cal.App. 3 Dist.,1996).

Finally, the court notes that, with respect to this claim, petitioner's traverse is at odds with his petition. His petition articulates this claim as trial court error (ECF No. 1 at 6); his traverse states that "[t]his claim is brought under the context of an ineffective assistance of counsel claim." ECF No. 19 at 8. The traverse does not explain how trial counsel was ineffective with respect to the pinpoint instruction and, in any event, a petitioner is not entitled to raise new claims in his traverse. *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Accordingly, the court declines to review this claim for ineffective assistance of counsel.

### B. <u>Failure to Offer a Sua Sponte Corpus Delicti Instruction</u>

Next, petitioner argues that the trial court erred in failing to offer a sua sponte corpus delicti instruction to the jury. ECF No. 1 at 9. The court of appeal considered and rejected this claim:

> Defendant contends the trial court committed reversible error by failing to instruct sua sponte on the corpus delicti rule, CALCRIM No. 359. In the alternative, he asserts the trial court should have instructed the jury to view defendant's extrajudicial statement with caution. We find the trial court erred, but the error was harmless.
>
> A.
>
> In a criminal trial, the prosecution must prove the corpus delicti of the crime—that is, the fact of injury, loss, or harm, and the existence of a criminal agency as its cause—without relying exclusively upon the defendant's extrajudicial statements, confessions, or admissions. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168–1169 (*Alvarez* ).) This requirement of independent proof precludes conviction based solely on a defendant's out-of-court statements. (*Id*. at p. 1178.) It "requires corroboration of the defendant's extrajudicial utterances insofar as they indicate a crime was committed, and forces the People to supply, as part of their burden of proof in every criminal prosecution, some evidence of the corpus delicti aside from, or in addition to, such statements." (*Ibid*., italics omitted.) The corpus delicti of a crime may be proven by circumstantial evidence and need not amount to proof beyond a reasonable doubt. (*Id*. at p. 1171.) Once the corpus delicti has been established, the defendant's statements may be considered for their full value and used to strengthen the prosecution's case. (*Id*. at pp. 1171, 1181.)
>
> The trial court has a duty to instruct sua sponte on the corpus delicti rule where the People rely in part on defendant's extrajudicial statement. (*Alvarez*, supra, 27 Cal.4th at pp. 1170, 1178, 1180, 1181.) However, "[e]rror in omitting a corpus delicti instruction is considered harmless, and thus no basis for reversal, if there appears no reasonable probability the jury would have reached a result more

12

favorable to the defendant had the instruction been given. [Citations.]" (*Id*. at p. 1181.) As long as there is " 'a slight or prima facie showing' " permitting an inference of injury, loss, or harm from a criminal agency, the jury may consider the defendant's statements to strengthen the case on all issues. (*Ibid*.) "If, as a matter of law, this 'slight or prima facie' showing was made, a rational jury, properly instructed, could not have found otherwise, and the omission of an independent-proof instruction is necessarily harmless." (*Ibid*.)

Section 245 defines the crime of assault with a deadly weapon to require "an assault upon the person of another" and the use of either "a deadly weapon or instrument other than a firearm" or "any means of force likely to produce great bodily injury." (§ 245, subd. (a)(1); *People v. McDaniel* (2008) 159 Cal.App.4th 736, 747–748.) A vehicle can be used as a "deadly weapon" within the meaning of this provision. (*People v. Russell* (2005) 129 Cal.App.4th 776, 782.) The crime of "assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790.)

During an argument while Ousley–Harps was driving 70 miles per hour on the freeway at night, defendant grabbed the steering wheel and probably steered it to the right. The highly dangerous nature of defendant's act, coupled with evidence of motive, a romantic evening soured into a highly contentious argument, supports an inference that defendant intended to crash the car by grabbing the steering wheel. This establishes a prima facie case of assault with a deadly weapon, rendering harmless the error in failing to instruct on the corpus delicti rule.

B.

As relevant here, CALCRIM No. 358 provides: "You have heard evidence that the defendant made [an] oral ... [statement] ... before the trial.... You must decide whether the defendant made any [such statement], in whole or in part. If you decide that the defendant made such [a statement], consider the [statement], along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the [statement]. [¶] ... Consider with caution any statement made by [the] defendant tending to show [his] guilt unless the statement was written or otherwise recorded...."

This instruction must be given sua sponte when warranted by the evidence. (*People v. Carpenter* (1997) 15 Cal.4th 312, 392 (*Carpenter* ).) "The rationale behind the cautionary instruction suggests it applies broadly. 'The purpose of the cautionary instruction is to assist the jury in determining if the statement was in fact made.' [Citation.] This purpose would apply to any oral statement of the defendant, whether made before, during, or after

13

> the crime." (*Id*. at pp. 392–393.) Since the People relied in part on defendant's statement to Ousley–Harps "You are going with me," as he grabbed the steering wheel, the trial court was required to give the instruction.
>
> Omission of the cautionary instruction is reviewable under "the normal standard of review for state law error: whether it is reasonably probable the jury would have reached a result more favorable to defendant had the instruction been given. [Citations.]" (*Carpenter*, *supra*, 15 Cal.4th at p. 393.)
>
> The admission consists of a single statement from defendant, as related by Ousley–Harps in her interview with Officer Macias. At trial, Ousley–Harps testified that defendant did not make the statement, and she could not recall telling the officer defendant had made such a statement. Although it was not instructed to view defendant's statement with caution, the jury was nonetheless instructed to determine whether the statement was made in light of Ousley–Harps's conflicting statements. The jury was instructed with CALCRIM No. 302 that "[i]f you determine that there is a conflict in the evidence, you must decide what evidence to believe." In addition, the jury was instructed with CALCRIM No. 226 that "[y]ou may believe all or part or none of the witnesses' testimony." CALCRIM No. 226 also instructed the jury to consider "[d]id the witness make a statement in the past that is consistent or inconsistent with his or her testimony" when evaluating a witness's testimony. Instructing the jury on evaluating a witness's credibility mitigates the prejudice from failing to give the cautionary instruction. (Carpenter, supra, 15 Cal.4th at p. 393.)
>
> Defendant's statement was evidence of the mental element of assault with a deadly weapon, " 'the general intent to willfully commit a battery, an act which has the direct, natural and probable consequences, if successfully completed, of causing injury to another. [Citations.]' " (*People v. Lee* (1994) 28 Cal.App.4th 1724, 1734.) This was far from the only evidence of defendant possessing the necessary mental element for assault with a deadly weapon. The act of pulling on a steering wheel of a car traveling on a freeway at 70 miles per hour is itself powerful circumstantial evidence of defendant's intent to willfully commit a battery, and was coupled with the uncontradicted evidence of motive, defendant's argument with his paramour.
>
> In light of the other instructions, the nature of defendant's statement, and the other evidence of his guilt, it is not reasonably probable that giving CALCRIM No. 358 would have lead to a different result.

*Johnson*, 2014 WL 793582, at *4–6. Petitioner presented this claim to the California Supreme Court (Lodg. Doc. No. 7 ("Petition for Review") at 18-27) and it was summarily denied (Lodg. Doc. No. 8 ("Order Denying Review")).

/////

14

### 1. Applicable Legal Standards

The same standards articulated in the previous section regarding instructional omission and error apply here. It also bears noting that corpus delicti is, pursuant to California law, a rule which "requires that a conviction be supported by some evidence which need only constitute a slight or prima facie showing, but must be in addition to and beyond the defendant's untested inculpatory extrajudicial statements." *People v. Rivas*, 214 Cal. App. 4th 1410, 1428 (Cal.App. 6 Dist. 2013) (internal quotation marks and citations omitted). Then, "once the necessary quantum of independent evidence is present, the defendant's extrajudicial statements may then be considered for their full value to strengthen the case on all issues." *Id.* at 1429.

### 2. Analysis

This claim fails because the corpus delicti rule is purely a matter of state law and, as such, provides no basis for federal habeas relief. *See, e.g.*, *Lopez v. Allison*, No. 1:11-cv-01335-LJO-SKO, 2014 U.S. Dist. LEXIS 92701 at *19-20 (E.D. Cal. July 8, 2014) (noting that "California's corpus delicti rule is a matter of state law" and collecting cases supporting that proposition); *Rodriguez v. Cate*, No. 12-cv-753-CJC-PJW, 2013 U.S. Dist. LEXIS 144187 at *35 (C.D. Cal. Oct. 2, 2013) (finding that the corpus delicti rule "is not grounded in federal law or the federal Constitution" and, consequently, "an alleged violation of this rule cannot form the basis of federal habeas relief."); *People v. Alvarez*, 27 Cal. 4th 1161, 1173 (2002) ("It is undisputed that the corpus delicti rule is not a requirement of federal law . . . ."). Nor can petitioner show that the omission of this instruction "so infected the entire trial that the resulting conviction violated due process." *Estelle*, 502 U.S. at 72. The jury was instructed as to the prosecution's requirement to prove each fact establishing guilt beyond a reasonable doubt. Lodg. Doc. No. 2 (Reporter's Transcript Vol I) at 124-25, 127. Additionally, independent evidence supported the inference that petitioner acted intentionally in grabbing the car's steering wheel. *Id.* at 40, 69.

### C. Sufficiency of the Evidence

Petitioner claims that the evidence underlying his assault with a deadly weapon conviction is insufficient. ECF No. 1 at 12. The court of appeal rejected this claim:

/////

Defendant's final contention is the evidence was insufficient to sustain his conviction for assault with a deadly weapon.

"To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.)

A conviction for violation of section 245, subdivision (a)(1) requires proof that the defendant: (1) willfully committed an unlawful act which by its nature would probably and directly result in the application of physical force on another person; (2) he was aware of facts that would lead a reasonable person to realize that as a direct, natural and probable result of this act that physical force would be applied to another person; (3) he had the present ability to apply physical force to the person of another; (4) he committed the assault by means of force likely to produce great bodily injury or used a deadly weapon in the assault. (CALCRIM No. 875.)

Defendant relies on *People v. Jones* (1981) 123 Cal.App.3d 83 (*Jones* ) and *People v. Cotton* (1980) 113 Cal.App.3d 294 (*Cotton* ). In those cases, the defendants were being pursued by police and, during the chases, struck vehicles and injured victims. (*Jones*, *supra*, 123 Cal.App.3d at p. 87; *Cotton*, *supra*, 113 Cal.App.3d at pp. 296–298.) In *Jones*, the assault with a deadly weapon conviction was reversed because the Court of Appeal concluded there was insufficient evidence to show Jones intended to commit a battery. (*Jones*, *supra*, 123 Cal.App.3d at pp. 96–97.) In *Cotton*, the trial court erred in concluding that reckless driving in violation of Vehicle Code section 23104 "per se generated a transferable intent to commit a battery via automobile in violation of Penal Code section 245, subdivision (a)." (*Cotton*, supra, 113 Cal.App.3d at p. 307.) Relying on these cases, defendant argues the evidence shows no more than recklessness, and the evidence does not establish that he had knowledge of the "facts sufficient to establish that momentarily grabbing the wheel would probably and directly result in the application of physical force against another."

Neither *Jones* nor *Cotton* is applicable to this case. Here, defendant (the passenger) grabbed the steering wheel as the car was going 70 miles per hour on the freeway, at night, in moderate traffic. The risk of harm to the driver and the occupants of the other vehicles on the roadway was not the consequence of evading an officer, but the intended result of defendant's action. Defendant's action was not merely reckless, it was an intent to commit an act whose natural and probable consequence was a car accident—the application of force to another person as a result of defendant's act of grabbing the steering wheel. Since the remaining elements of assault with a deadly weapon are uncontested, we reject defendant's contention. Moreover both *Jones* and *Cotton* predate the Supreme Court's decision in *People v. Williams* (2001) 26 Cal.4th 779, 790, which altered the law of assault reflected in CALCRIM No. 875.

16

Johnson, 2014 WL 793582, at *6. Petitioner raised this claim in his petition for review to the California Supreme Court (Lodged Doc. No. 7 (Petition for Review) at 27-30) which was summarily denied (Lodged Doc. No. 8 (Order Denying Review)).

### 1. **Applicable Legal Standards**

The Due Process Clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). There is sufficient evidence to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[T]he dispositive question under *Jackson* is 'whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.'" *Chein v. Shumsky*, 373 F.3d 978, 982 (9th Cir. 2004) (quoting *Jackson*, 443 U.S. at 318). Put another way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1 (2011). Sufficiency of the evidence claims in federal habeas proceedings must be measured with reference to substantive elements of the criminal offense as defined by state law. *Jackson*, 443 U.S. at 324 n.16.

In conducting federal habeas review of a claim of insufficient evidence, "all evidence must be considered in the light most favorable to the prosecution." *Ngo v. Giurbino*, 651 F.3d 1112, 1115 (9th Cir. 2011). "*Jackson* leaves juries broad discretion in deciding what inferences to draw from the evidence presented at trial," and it requires only that they draw "'reasonable inferences from basic facts to ultimate facts.'" *Coleman v. Johnson,* 566 U.S. , 132 S.Ct. 2060, 2064, 182 L. Ed. 2d 978 (2012) (per curiam ) (citation omitted). "'Circumstantial evidence and inferences drawn from it may be sufficient to sustain a conviction.'" *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995) (citation omitted).

If the record supports conflicting inferences, the reviewing court "must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120,

133 (2010) (per curiam) (quoting *Jackson*, 443 U.S. at 326). In evaluating the evidence presented at trial, this court may not weigh conflicting evidence or consider witness credibility. *Wingfield v. Massie*, 122 F.3d 1329, 1332 (10th Cir. 1997). Instead, as noted above, the Court must view the evidence in the "light most favorable to the prosecution," *Jackson*, 443 U.S. at 319.

Juries have broad discretion in deciding what inferences to draw from the evidence presented at trial. This court may not "impinge[ ] on the jury's role as factfinder," or engage in "fine-grained factual parsing." *Coleman*, 132 S.Ct. at 2065. As the Ninth Circuit has explained, "[t]he relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but whether the jury could reasonably arrive at its verdict." *United States v. Mares*, 940 F.2d 455, 458 (9th Cir. 1991). Under *Jackson*, the Court need not find that the conclusion of guilt was compelled, only that it rationally could have been reached. *Drayden v. White*, 232 F.3d 704, 709-10 (9th Cir. 2000).

"A petitioner for a federal writ of habeas corpus faces a heavy burden when challenging the sufficiency of the evidence used to obtain a state conviction on federal due process grounds." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir. 2005). Because this case is governed by the Anti-Terrorism and Effective Death Penalty Act, this court owes a "double dose of deference" to the decision of the state court. *Long v. Johnson*, 736 F.3d 891, 896 (9th Cir. 2013) (quoting *Boyer v. Belleque*, 659 F.3d 957, 960 (9th Cir. 2011)). *See also Coleman*, 132 S.Ct. at 2062 ("*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference."); *Kyzar v. Ryan*, 780 F.3d 940, 943 (9th Cir. 2015) (same).

**2. Analysis**

The court of appeal's rejection of this argument was not inconsistent with the standard articulated in *Jackson*. As noted *supra*, petitioner grabbed for the wheel of a car travelling seventy miles per hour on a freeway. A rational trier of fact could easily conclude that this was an act that would probably cause physical injury to another person by way of a high speed crash. It must be emphasized that the prosecution was not obliged to prove that petitioner actually intended to use force against someone, rather it was required to show that petitioner acted with a deadly weapon which, by its nature, would probably and directly result in the application of

physical force to another person. *See People v. Williams*, 26 Cal.4th 779, 790, 111 Cal. Rptr. 2d 114, 29 P.3d 197 (2001)). The jury could reasonably have arrived at the guilty verdict at issue here and this claim does not entitle petitioner to relief.

### D. Ineffective Assistance of Counsel

In his traverse and for the first time, petitioner claims that his trial and appellate counsel rendered ineffective assistance by: (1) failing to challenge the prosecution's decision to charge him with a felony rather than a misdemeanor; (2) failing to challenge the victim's recantation; (3) raising a weak argument with respect to the trial court's alleged instructional error; and (4) failing to object to the prosecution's vouching for the victim's credibility and its emphasis of motive in its closing argument. ECF No. 19 at 5-8. These various ineffective assistance claims will not be considered. First, new claims may not be raised in a petitioner's traverse. *Cacoperdo,* 37 F.3d at 507. Second, petitioner already moved for a stay to allow him to exhaust these claims in state court (ECF No. 18) and this court denied that motion, concluding that he had failed to demonstrate good cause for his failure to previously exhaust them (ECF No. 23).

## IV. Conclusion

Accordingly, IT IS HEREBY ORDERED that petitioner's application for a writ of habeas corpus is denied. A Certificate of Appealability shall not issue.

The Clerk is directed to enter judgment accordingly and close the case.

DATED: April 19, 2018.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE